UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| K. Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**    IN CHAMBERS – COURT ORDER

Before the Court are cross motions for summary judgment. Defendants Fekkai Retail LLC and Blue Mistral LLC ("Defendants") filed a Motion for Summary Judgment. (Dkt. No. 36 ("Mot.").) Plaintiff Mireya Rios ("Plaintiff") filed an Opposition (Dkt. No. 43 ("Opp.")), and Defendants filed a Reply (Dkt. No. 46). Plaintiff filed a Motion for Partial Summary Judgment. (Dkt. No. 37.) Defendants filed an Opposition (Dkt. No. 49), and Plaintiff filed a Reply (Dkt. No. 51). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds these matters appropriate for decision without oral argument.

**I.    Background**

Plaintiff is a social media influencer who has a large following on TikTok and Instagram. (Plaintiff's Statement of Undisputed Facts ("Pl.'s SUF") ¶ 1.) Plaintiff owns and promotes the "Mireya Rios" brand, and owns the social media handle "@mireyarios" on both TikTok and Instagram. (Id. ¶ 4, Decl. of M. Rios ¶¶ 6-7, Exs. 4, 5.)

In August of 2019, Plaintiff met Sanjana Arefin, the Head of Social Media for defendant Fekkai. (Defendants' Statement of Undisputed Facts ("Defs. SUF") ¶ 1, M. Rios Dep. Tr. at 112:19-23.) Ms. Arefin and Plaintiff agreed that Fekkai would pay Plaintiff $700 for Plaintiff to promote Fekkai on Instagram. (Id. at 2, Ex. 10 to Decl. of M. Rios.). Plaintiff continued to follow up with Ms. Arefin, telling Ms. Arefin that she would "love to be considered for any upcoming campaigns." (Id.)

On December 17, 2019, Ms. Arefin, delivered a contract to Plaintiff entitled "Services Agreement." (Pl.'s SUF ¶ 13, Decl. S. Arefin ¶ 13, Ex. 1.) This Services Agreement was meant to engage Plaintiff as a social media influencer partner for Fekkai. (Id., Decl. S. Arefin ¶ 15 ("The Agreement was for [Plaintiff's] services as an Influencer, wherein [Plaintiff] would post content videos and Instagram Stories about Fekkai products.") On January 2, 2020, Ms. Arefin received comments to the Services Agreement from Plaintiff via email. (Id., Decl. S. Arefin ¶ 18, Ex. 3.) These comments did not substantively change the Services Agreement. Neither the December 17, 2019 draft nor the January 2, 2020 Services Agreement were ever signed by Plaintiff or Fekkai. (Decl. S. Arefin ¶ 19.) However, the parties operated as if the Services Agreement was in effect, with Plaintiff posting content to her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

social media accounts and Defendants compensating Plaintiff for these posts. (M. Rios Dep. Tr., 254:24-255:24.)

In later communications between Ms. Arefin and Plaintiff, Ms. Arefin informed Plaintiff that she was going to be adding a lot of stuff "a la carte," to Plaintiff's contract, and that the contract did not include brand videos. (Decl. S. Arefin Ex. 2.) Plaintiff responded that she was "[v]ery excited about the brand videos." (Id.)

Ms. Arefin also asked Plaintiff whether Plaintiff would agree to participate in a video shoot in Los Angeles for Fekkai (the "Content Shoot"). (Pl.'s SUF ¶ 14; Decl. M. Rios ¶ 11 Ex. 8.) The Content Shoot was scheduled for January 22, 2020, and January 23, 2020. (Id. ¶ 15.) Plaintiff participated in the first day of the Content Shoot on January 22, 2020, and was surprised to see how many people were present. (Id. ¶ 18; Decl. M. Rios ¶ 13.) According to Plaintiff, Plaintiff was under the impression that the Content Shoot was going to be "just another simple social media shoot" to create content for her Instagram channel. (Id. ¶ 17.) Despite her surprise, Plaintiff participated in the Content Shoot. (Id. ¶ 19.) Plaintiff showed up for the second day of the Content Shoot as well. (Id. ¶ 21, Dep. Tr. M. Rios, 75:3-12 ("So you showed up at the photo shoot, stayed there for two days voluntarily, correct? Yes. You knew you were being filmed the whole time, correct. Yes." And what did you think the footage was going to be used for? I wasn't sure, actually, I was never told what it was going to be used for.") .)

According to Plaintiff, Plaintiff's consent to use her likeness in connection with the Content Shoot was conditioned upon receiving payment from Defendants. (Id. ¶ 33.) However, during the Content Shoot, Plaintiff never informed Defendants that she did not consent to the Content Shoot. Plaintiff also did not discuss compensation with Defendants because she did not want to risk her relationship with Defendants. (Dep. Tr. M. Rios 145: 12-24 ("Well, you understood, when you were there and afterwards, what you got yourself into, right? Correct. And you never objected to it at any time during the shoot, correct? Correct. As I had mentioned, I had a great experience with the brand. I had liked the brand. And I wanted to continue a professional relationship with the brand. And I didn't know how to approach the situation. Okay. And so you just stayed on there and never said anything during the shoot, correct? Correct. I didn't know how to handle it.").

On April 13, 2020, three months after the Content Shoot, Plaintiff communicated to Fekkai that she wished to be compensated for the Content Shoot. (Dep. Tr. M. Rios 77:12-78:9.) The parties went back and forth on several versions of a Digital Social Media Release, in which Plaintiff would agree to authorize Defendants to use her "name, voice, moving image, photograph and likeness . . . in connection with the [Content Shoot]." (Defs. SUF, Ex. 16.) Ultimately the parties never reached an agreement, and Plaintiff never signed the Digital Social Media Release.

Defendants used footage of Plaintiff from the Content Shoot on billboards above the Mayo Clinic in Minneapolis, as well as in the Skyway in Minneapolis from March 2, 2020 through March 15, 2020. (Pl.'s SUF ¶ 45.) The billboard consisted of two different video advertisements featuring Plaintiff, which cross-promoted Fekkai hair products with Target. (Id. ¶ 46.) Defendants additionally used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

footage from the Content Shoot in online advertisements and placements from March 25, 2020 through July 16, 2020. (Id. ¶ 48.) In addition, Defendants have posted the videos to their own social media platforms. (Id.)

Plaintiff brings claims against Defendants for: (1) misappropriation of name and likeness under California common law, (2) violation of California Civil Code § 3344, (3) unfair competition under California Business and Professions Code § 17200, and (4) a Lanham Act violation under 15 U.S.C. § 1125.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See id. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252). Otherwise, summary judgment shall be entered.

## III.     Discussion

Defendants now move for summary judgment on all of Plaintiff's claims, arguing Plaintiff cannot prove lack of consent as required for each of Plaintiff's claims. Plaintiff moves for partial summary judgment on Plaintiff's claims for (1) misappropriation, (2) California Civil Code § 3344, and (3) Plaintiff's claim under the Lanham Act, § 43.[1]

---

[1]     In her introduction, Plaintiff states she is asking the Court to decide all issues except liability. However, in her Motion, Plaintiff does not make any argument as to her claim for unfair competition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

  Defendants argue summary judgment is appropriate because each of Plaintiff's claims require her to prove lack of consent, and Plaintiff consented to the Content Shoot and the use of her name and likeness from the Content Shoot. This Court agrees.

  Each of Plaintiff's claims requires Plaintiff to prove lack of consent. See Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) ("To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove . . . lack of consent."); Cal Civ. Code § 3344 ("Under section 3344, a plaintiff must prove all the elements of a common law cause of action. In addition, the plaintiff must allege a knowing use without consent by the defendant as well as a direct connection between the alleged use and the commercial purpose."); Local TV, LLC v. Superior Court, 3 Cal. App. 5th 1, 14 (2016) (an unfair competition claim that is based on the same conduct underlying common law and § 3344 misappropriation claims requires proving lack of consent); Hicks v. PGA Tour, 897 F.3d 1109, 1120 (9th Cir. 2018) (finding plaintiff failed to state a Lanham Act claim because he consented, and there was no "unauthorized" use of plaintiff's identity). Consent "to use a name or likeness need not be express or in writing, but it may be implied from the consenting party's conduct and the circumstances of the case." Jones v. Corbis Corp., 815 F. Supp. 2d 1108, 1113 (C.D. Cal. May 25, 2011); see also Newton v. Thomason, 22 F.3d 1455, 1461 (9th Cir. 1994) (affirming summary judgment in favor of defendant in right of publicity suit because plaintiff failed to show a lack of consent where plaintiff never expressly consented but expressed excitement about the use of his likeness and never objected to the use of his likeness over several months); Hill v. National Collegiate Athletic Assn., 7 Cal. 4th 1 (1994) ("T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e. he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant.").

  Here, Plaintiff does not dispute that she consented to have photos and videos of herself taken at the Content Shoot. Plaintiff showed up to the first day of the Content Shoot, stayed the whole day, and then participated in a full second day of the Content Shoot. Plaintiff's only argument is that she had "no idea the Content Shoot would be a full production with a budget of $170,000 which would then turn into billboards and a national online advertising campaign," and that "Plaintiff at all times expected to be paid in consideration for her consent to the use of the footage." (Plaintiff's Mot. at 12-13.) However, "Plaintiff's subjective beliefs as to her consent are not determinative; consent is measured from Plaintiff's manifested action or inaction." Jones, 815 F. Supp. 2d at 1114. It is undisputed that Plaintiff voluntarily appeared for two days of the Content Shoot, and did not discuss compensation with Defendants until well after the Content Shoot ended. (Dep. Tr. M. Rios, 75:3-12 ("So you showed up at the photo shoot, stayed there for two days voluntarily, correct? Yes. You knew you were being filmed the whole time, correct. Yes.") (Id. 145: 12-24 ("Well, you understood, when you were there and

---

under California Business and Professions Code §17200. (See Pl.'s Mot. at 1 ("All we are asking for in this motion is that the Court find liability in favor of Plaintiff, leaving the damages amount as the only outstanding issue for trial.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

afterwards, what you got yourself into, right? Correct. And you never objected to it at any time during the shoot, correct? Correct.").

Newton v. Thomason, 22 F.3d 1455 (9th Cir. 1994) is instructive. In Newton, the Ninth Circuit affirmed the trial court's finding that plaintiff failed to show a lack of consent. The court noted that, while the plaintiff did not expressly consent to the use of his name, no "fair-minded jury could find non-consent based on [the plaintiff's] July 18, 1990 letter and subsequent conduct." Id. In the letter, the plaintiff stated to the defendant that he and others were excited that the defendants were using his name. Further, the plaintiff never objected to the use of his name until several months after he found out his name was being used. Similarly here, Plaintiff stated she was "[v]ery excited about the brand videos," and did not object to her photos and videos being used until months after the Content Shoot ended. See Newton, 22 F.3d at 1461 ("Newton spoke with Thomason on several occasions in the ensuring months and never even hinted that he objected to the use of his name.").

As in Newton, Plaintiff attempts to show that Defendants did not believe there was consent by pointing to the fact that Defendants later requested consent in writing. (See Opp. at 1 ("Defendants tried to cover their tracks by forcing Plaintiff to sign a release."); id. at 10 ("Defendants tried to manipulate Plaintiff into signing a separate Release, even as far as threatening her with a lawsuit for not signing the Release. Lack of consent on Plaintiff's part for use of footage from the Content Shoot containing her likeness in billboard and online advertising is clearly established."). However, the fact that Defendants, out of an abundance of caution, tried to secure a release, does not mean Defendants did not believe Plaintiff had consented. See Newton, 22 F.3d at 1461 ("Nor does the fact that a lawyer, out of caution, requested a writing from Newton stating "I consent" mean that Appellants did not believe they had Newton's consent."). Although Plaintiff may have never "uttered the works, 'I consent,' it is obvious [from the record] that [Plaintiff] did consent." Id. Plaintiff has not presented any evidence showing that Defendants had any reason to believe she did not consent to her name and likeness being used in connection with the Content Shoot. See Jones, at 1115 ("Plaintiff can point to no evidence showing photographers had a reason to believe she did not consent to their use of her name and likeness in selling red carpet photos.").

Plaintiff's authority is distinguishable. Plaintiff relies on dicta in Eastwood v. Superior Court, 149 Cal. App. 3d 409 (1983), for the proposition "that use of a celebrity's photograph without obtaining proper release ahead of time constituted a use without consent". The Court in Eastwood, did not address a discuss lack of consent. Rather the issues in Eastwood were before the Court on a demurrer that involved the interpretation of "commercial use."

The Court concludes Plaintiff cannot establish lack of consent as required to prove Plaintiff's claims for (1) commercial misappropriation, (2) violation of California Civil Code § 3344 (3) unfair competition under California Business Code § 17200, and (4) a violation of the Lanham Act under 15 U.S.C. § 1125.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8743 PA (MRWx) | Date | July 6, 2021 |
|---|---|---|---|
| Title | Mireya Rios v. Fekkai Retail LLC, et al. | | |

### **Conclusion**

    For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment. Plaintiff's Motion for Partial Summary Judgment is denied as moot. The Court will issue a judgment consistent with this Order.

    IT IS SO ORDERED.